[No. 1493.  Decided January 11, 1895.]

EDWARD HUGGINS, *Respondent, v.* THE MILWAUKEE BREW-
ING COMPANY, *Appellant.*

ACTION AGAINST CORPORATION—REFUSAL TO TRANSFER STOCK—
RES JUDICATA.

An action for damages for the value of stock in a corporation based
on a refusal to transfer, cannot be maintained by a stockholder or his
assignee against another corporation, which has succeeded to all the
property, rights and interests of the corporation which issued the
stock.

The fact that judgment has been rendered against a stockholder in
a certain corporation foreclosing a pledge of his stock, to which
action another corporation of the same name, which had succeeded
to the property of the corporation which issued the stock in contro-
versy, was made a party defendant, but answered disclaiming any
interest in the stock, will not estop the second corporation from set-
ting up, in an action for damages against it for the value of the stock
based on a refusal to transfer, that it had not issued the same, there
being no finding in the prior action that the stock represented shares
of such second corporation and the judgment therein being against
the stockholder of the original corporation only.

*Appeal from Superior Court, Pierce County.*

*O'Brien & Robertson (Hugh Farley,* of counsel), for
appellant.

*Hoxie & Richardson* and *W. H. Bogle,* for respondent.

The opinion of the court was delivered by

STILES, J.—The complaint in this action averred the exis-
tence of appellant as a domestic corporation at all the times
therein mentioned; the commencement of a suit by the
National Bank of Commerce of Tacoma, against S. S. Loeb
*et al.* (impleading the Milwaukee Brewing Company), April
21, 1893, for the recovery of a judgment against said Loeb
and two others of the individual defendants, on their prom-
issory note, and the foreclosure of a pledge of sixty shares of

stock in the Milwaukee Brewing Company, collateral to said note ; the recovery of judgment in the suit mentioned, September 6, 1893 ; the sale of the stock, upon execution, to the plaintiff, September 22, 1893 ; the presentation of the stock accompanied by a sheriff's bill of sale in November, 1893, to the President and Secretary of the Milwaukee Brewing Company, at its office, and a demand for the transfer of the shares on the books of the company ; the refusal of the Milwaukee Brewing Company to make the transfer ; and plaintiff's damage in the sum of $6,600, the alleged value of the stock at the date of the demand. Prayer for damages in the sum named. The fifth paragraph contained an averment that the decree obtained by the National Bank of Commerce "adjudged that said certificate represented sixty shares of the capital stock of the said Milwaukee Brewing Company."

The answer of the defendant was a specific denial of all the allegations of the complaint except those averring its own corporate existence. During the progress of the trial the plaintiff was allowed to amend by adding an allegation that the stock which was the subject of the former action was stock of the defendant corporation duly issued to the person named therein as the owner thereof. Defendant denied generally. There was judgment for plaintiff for $1,320.

At the trial the plaintiff produced the record in the former case, and the certificates of stock, accompanied by the sheriff's bill of sale, and offered testimony tending to show a demand that the stock be transferred to him, which was met by a refusal, and that the stock was of a certain value. There were two certificates purporting to be duly issued certificates for stock in The Milwaukee Brewing Company. One of the certificates was numbered 3, and dated June 22, 1891 ; the other was numbered 7 and dated January 1, 1892. The first was issued to Sam. S. Loeb ; the second to B. Loeb. Upon the face of the certificates was printed, "Transferable only on the books of the company by the endorsement of this certificate and its surrender to the Secretary." Printed

upon the back of each was the usual blank assignment and power of attorney to transfer, which had been signed by the person named in the certificate as entitled to the shares. The certificates contained the legend, "Capital Stock $35,000 ; 350 shares, $100 each." Sam. S. Loeb signed the certificates as president, and A. Weinberg as secretary. The seal of the corporation attached contained the words : "Milwaukee Brewing Company, incorporated May, 1891."

The plaintiff offered no evidence tending to show the existence of the corporation which issued the stock certificates, choosing, it seems, to rest upon matters hereafter alluded to to sustain his position that the defendant corporation was responsible for the existence of the certificates, and for the reliance of the National Bank of Commerce and himself thereon.

The defendant, however, was not incorporated until February 24, 1893, and hence arose the complications of the case. The defendant admitted that in 1891 there was a company acting under the name of The Milwaukee Brewing Company, of which Loeb was president and Weinberg, secretary, doing business in Tacoma, and issuing stock ; that defendant has the same name, occupies the same office, carries on the same business, has the same amount of stock as the other company, and has acquired its property. It was not admitted that the stock-holders in the defendant company were the same, and it was shown that the defendant had not issued any of its stock. It was not shown that either Sam. S. Loeb, or B. Loeb, was a stockholder in the present company, or that either of them had any interest in such company, which would entitle them to stock when issued. Neither was it shown by what means the present company had acquired the property of its namesake.

Under this state of the evidence the court below declared that it would hold the appellant responsible for the acts of the former company in issuing this stock, and for all its acts, for the purposes of this case, and instructed the jury that it might find a verdict for the value of the stock at the date of

the demand made for a transfer. Other appropriate instructions were given, but it is not necessary to refer to them particularly.

We think it may be fairly assumed from the attitude of the respondent in this and the former case, and from all the facts appearing in the record, that there was a Milwaukee Brewing Company, organized in May, 1891, which was at least a *de facto* corporation so far as the bank and respondent were concerned. Whether it was a corporation *de jure* or not is left by this record entirely to conjecture. It was that corporation which issued these certificates, and it was with that corporation, and none other, that the Loebs had their contract, for the violation of which, in refusing to transfer stock they or their assignees could maintain an action at law, as some authorities hold, for damages, as for a conversion to the full value of the stock. 1 Cook, Stock, etc., § 389.

Whether a rule giving to stockholders in a corporation such a privilege would have to be upheld in this state we need not now decide. But granting that it is a rule so firmly established in the law that its enforcement could be justly required under our statutes governing corporations, we are strongly convinced that it is a harsh and dangerous rule, the application of which ought not to be extended beyond those cases where there is a clear legal right on the part of the assignee of stock certificates to have a transfer. Does this case present a state of facts calling for such a remedy? In the first place the original complaint, with apparent studiousness, avoided any allegation to the effect that the Milwaukee Brewing Company, sixty shares of whose stock had been acquired by the plaintiff, was the defendant company, and it was not until the court threatened to sustain a motion for a non-suit, on the ground that there was neither allegation nor proof of the character mentioned, that an amendment was made covering the ground. Still, no proof was offered, and it was not until after the defendant admitted that its name, amount of stock, place of residence and character of business was the same as that of the former com-

pany, and that it had acquired the property of the former company, although it was incorporated nearly two years later, and with different stockholders, that the court announced that the personnel of the stockholders would make no difference, and that it should hold the defendant " *responsible* " for the acts of the former company in issuing the stock. This theory of responsibility was not the theory upon which the action was brought and the complaint framed, and we are constrained to believe that it was the similarity of names rather than anything else which led to its adoption. For it is easily conceivable that a "St. Louis Brewery Company" might have been organized with all the other features of the defendant precisely the same, against which the action would not have been sustained. This St. Louis Company might have acquired all of the property of the Milwaukee Brewing Company, organized in May, 1891, by paying therefor its full value in cash, and, if so, it would have been discharged of every obligation due from said Milwaukee Brewing Company to its stockholders, or their assignees. And it is not any more impossible that the defendant company, notwithstanding its unfortunate, not to say suspicious, choice of a name, may have done the same thing, and that the original Milwaukee Brewing Company may have had the proceeds of its property, paid in good faith, in its treasury at the time of the alleged demand for a transfer. In such a case it would be out of the question to sustain an action of this kind.

But by this argument we are not denying to the respondent a proper remedy in case it should be true, as it is insinuated, that the defendant is but a reorganization of the old company, or the old company with some amendments to its articles of incorporation, or a new company which has simply taken possession of the property of the old company without paying anything for it. All that appears by this record is that defendant is a new company, organized in 1893; the other matters were not made to appear, and they would have been inadmissible under the form of action adopted. A proper form of action might have developed the facts sug-

gested, and out of them might have grown a responsibility to the respondent to the extent of his shares, perhaps to admit him as a stockholder, and perhaps only to pay him his proportion of the value of the property fraudulently taken possession of without compensation. It is needless to say that such an action would be equitable in its nature, and that the respondent would therein be required to accept whatever the circumstances of the case might show to be his proper judgment.

But the case before us is purely an action at law, brought for violation of the implied contract arising from the issuance of stock certificates by a corporation, which the only competent evidence in the record shows was not the defendant, but another, older corporation of the same name. No contract relation being shown to exist between the parties, this action at law cannot be upheld.

Respondent, in this court, apparently for the first time, since no mention of it was made below, urges that the judgment in the former case cut off the right of appellant to say that it was not stock issued by it that was sold to respondent. This contention is based upon the fact that appellant was made a party defendant to the former action under the averment that it claimed some interest in the pledged stock, which interest was subject to that of the plaintiff. Appellant answered denying generally the allegations of the complaint for want of information, thus disclaiming any interest in the stock. The judgment ran against Samuel S. Loeb only, did not dispose of the other defendants at all, and directed that the lien of the bank be foreclosed and the stock sold. There was no finding that the certificates represented shares of the appellant in this case, though there was a declaration that the certificates, which purported to be for sixty shares each, actually represented only sixty shares in all. As was before stated, these certificates bore upon their face that they were certificates of a Milwaukee Brewing Company organized in May, 1891, and were, therefore, not certificates of the appellant company. The allegation of the complaint averring a claim of interest by the defendant com-

pany in the stock is appealed to, however to sustain the estoppel without reference to the judgment. It might be that, in a suit to foreclose a pledge of stock, the corporation issuing it would be a proper or even a necessary party, since it would be capable of having claims the same as a natural person, but we very much doubt whether, if made a party, under such an allegation as that before us, it would be called upon to litigate the question whether it had issued the pledged certificates. Such is certainly not the practice. The citations from 2 Cook, Stock, etc., § 844, refer only to foreclosures upon the *property* of corporations, and are not relevant to foreclosures of the pledged stock of corporations, which is the property of the stockholders. The pledgee of these certificates had it in its power to determine the attitude of the corporation which issued them—whether they represented sixty or one hundred and twenty shares—at any time without suit, since the endorsed assignment and power of attorney was signed in blank by Sam. S. Loeb and B. Loeb, which authorized the pledgee to fill up the blanks and demand transfers.

But this discussion is really unnecessary, since an estoppel was not only not pleaded (Herman on Estoppel, § 1261; *Walker v. Baxter*, 6 Wash. 244); but it was not suggested in the course of the trial, nor was the jury charged upon any such theory.

The appellant, at the close of the trial, moved for an instruction directing the jury to find in its favor, which was refused. In this the court erred, and the cause must be reversed and remanded for disposition in accordance with that motion. So ordered.

HOYT and ANDERS, JJ., concur.
DUNBAR, C. J., dissents.